[Cite as *Ohio Pub. Works Comm. v. Barnesville*, 2020-Ohio-4034.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

OHIO PUBLIC WORKS COMMISSION,

Plaintiff-Appellant,

v.

VILLAGE OF BARNESVILLE ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 BE 0011**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 18 CV 144

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in Part. Reversed in Part.
Remanded.

---

*Atty. Dave Yost*, Ohio Attorney General, *Atty. James Patterson,* Assistant Attorney General, *Atty. Rachel Huston,* Assistant Attorney General, *Atty. Leigh Bayer,* Assistant Attorney General, *Atty. Cory Goe,* Assistant Attorney General, *Atty. Christie Limbert,* Assistant Attorney General, *Atty. Lidia Mowad,* Assistant Attorney General, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215, for Plaintiff-Appellant, and

*Atty. Stephen McCann, Atty. Robert McClelland, Atty. Travis Jones,* Graham & Graham Co., LPA, 17 North 4th Street, P.O. Box 340, Zanesville, Ohio 43702, *Atty. Marlin Harper,* 109 East Church Street, Barnesville, Ohio 43713, and *Atty. Adam Myser,* Myser & Myser, 320 Howard Street, Bridgeport, Ohio 43912, for Defendant-Appellee, Village of Barnesville, and

*Atty. Joseph Koncelik, Atty. John Lewis, Atty. Jennifer Mesko,* Tucker Ellis LLP, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113, for Defendant-Appellee, Antero Resources Corporation, and

*Atty. Daniel Gibson, Atty. Matthew Warnock, Atty. Christine Schirra, Atty. Aaron Bruggeman,* Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215, and *Atty. Zachary Simpson,* Gulfport Energy Corporation, 3001 Quail Springs Parkway, Oklahoma City, Oklahoma 73134, for Defendant-Appellees, Gulfport Energy Corporation.

Dated:
August 6, 2020

**DONOFRIO, J.**

{¶1}     Plaintiff-appellant, the Ohio Public Works Commission (OPWC), appeals the judgment of the Belmont County Common Pleas Court granting a judgment on the pleadings in favor of defendant-appellee, Gulfport Energy Corporation, and granting summary judgment in favor of defendants-appellees, the Village of Barnesville and Antero Resources Corporation.

{¶2}     This case concerns the Clean Ohio Conservation Program and approximately 104.12 acres of property in Belmont County, Ohio.

{¶3}     In 2000, Ohio voters approved a constitutional amendment to create a tax-exempt bond fund to be used for environmental conservation and revitalization purposes. Ohio Constitution, Article VIII, Section 02o(A).  The amendment permitted the General Assembly to enact laws in accordance with the amendment.  Ohio Constitution, Article VIII, Section 02o(B).  As a result of the amendment, the Clean Ohio Fund Green Space Conservation Program was created and OPWC was tasked with administering the program.

{¶4}     On April 4, 2002, appellee the Village of Barnesville (the Village) submitted an application with the OPWC.  This application requested a $150,000 grant from the

Clean Ohio Fund to help finance the purchase of 92.1194 acres of land in Somerset Township in Belmont County for the purpose of preserving it as open space (the Reservoir Project).

{¶5}    On July 1, 2002, OPWC approved the Village's $150,000 grant for the Reservoir Project. This approval was memorialized in a project grant agreement. Per the terms of the project grant agreement, the Village was required to record six restrictions on the property in the deed or another instrument. On February 27, 2003, the Village purchased the land for the Reservoir Project from Helen and Henry Wilcox. This purchase was memorialized in a general warranty deed recorded on September 2, 2003. This deed did not have the required restrictions.

{¶6}    On October 14, 2003, the Village recorded a deed of correction for the Reservoir Project. This deed of correction noted that the Village received funds from OPWC in order to purchase the property. The deed of correction added the required restrictions to the Reservoir Project's general warranty deed. The following four restrictions in the deed of correction are relevant to this appeal:

> 1. Use and Development Restrictions. Declarant hereby agrees, for itself and its successors and assigns as owners of the Property, that the property shall be subject to the following: The Property shall only be used for open space with trails, and for passive recreational appurtenances.
> 2. Perpetual Restrictions. The restrictions set forth in this Declaration shall be perpetual and shall run with the land for the benefit of, and shall be enforceable by, OPWC. This declaration and the covenants and restrictions set forth herein shall not be amended, released, extinguished or otherwise modified without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.
> 3. Enforcement. If Declarant, or its successors or assigns as owner of the Property, should fail to observe the covenants and restrictions set forth herein, the Declarant or its successors or assigns, as the case may be, shall pay to OPWC upon demand as liquidated damages, an amount equal to the greater of (a) two hundred percent (200%) of the amount of the grant received by Declarant, together with interest accruing at the rate of six percent (6%) per annum from the date of Declarant's receipt of the grant, or (b) two hundred percent (200%) of

the fair market value of the Property as of the date of demand by OPWC. Declarant acknowledges that such sum is not intended as, and shall not be deemed, a penalty, but is intended to compensate for damages suffered in the event a breach or violation of the covenants and restrictions set forth herein, the determination of which is not readily ascertainable. OPWC shall have the right to enforce, by any proceedings at law or in equity, all restrictions, conditions and covenants set forth herein. Failure by OPWC to proceed with such enforcement shall in no event be deemed a waiver of the right to enforce at a later date the original violation or a subsequent violation.

4. Restriction on Transfer of the Property. Declarant acknowledges that the grant is specific to Declarant and that OPWC's approval of Declarant's application for the grant was made in reliance on Declarant's continued ownership and control of the Property. Accordingly, Declarant shall not voluntarily or involuntarily sell, assign, transfer, lease, exchange, convey or otherwise encumber the Property without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

{¶7} The deed of correction identifies "Declarant" as the Village, "OPWC" as the Ohio Public Works Commission, and describes both tracts of land in the Reservoir Project using metes and bounds.

{¶8} On September 23, 2002, the Village submitted a second grant application to OPWC. This application requested a $38,850 grant from the Clean Ohio Fund to help finance the purchase of 12 acres of land in Warren Township in Belmont County for the purpose of preserving wetlands (the Wetlands Project).

{¶9} On October 9, 2002, OPWC approved the Village's grant for the Wetlands Project. This grant was memorialized in a project grant agreement identical to the one for the Reservoir Project.

{¶10} The Village purchased the property for the Wetlands Project from Frederick and Jean Claugus by a general warranty deed dated March 21, 2003. This deed contained the same six restrictions required by appellant that are found in the deed of correction for the Reservoir Project. The deed for the Wetlands Project was recorded on March 25, 2003.

{¶11} The Village subsequently granted several interests on the properties for both the Reservoir and the Wetlands Projects, none of which were done with OPWC's

Case No. 19 BE 0011

written approval.  On September 10, 2012, the Village executed an oil and gas lease on 1047.5047 acres of real property in favor of appellee Antero Resources (Antero).  This oil and gas lease included the Wetlands Project's real property.  On October 23, 2014, Antero executed a partial assignment of the oil and gas lease to appellee Gulfport Energy (Gulfport).

{¶12}  On January 13, 2014, the Village executed a water lease in favor of Antero on the real property for the Reservoir and the Wetlands Projects.  This lease granted Antero an easement and a right-of-way on and across the properties to construct and maintain a water system.

{¶13}  On June 18, 2014, the Village granted an easement to South Central Power Company (South Central) on the Reservoir Project's real property for the purposes of constructing an electric power line.

{¶14}  On March 30, 2015, Antero executed a partial assignment of its oil and gas lease with the Village in favor of Eclipse Resources (Eclipse).

{¶15}  On April 17, 2018, OPWC filed this action against the Village, Antero, Gulfport, South Central, and Eclipse.  OPWC's complaint alleged that the Village violated the deed restrictions on the Reservoir and the Wetlands Projects.  OPWC sought an injunction enjoining appellees from any and all mineral extraction from both Projects' properties, declaratory judgment that the leases entered into by the Village were void because they violated deed restrictions, and monetary damages.  At some point, OPWC voluntarily dismissed Eclipse and South Central from this action.

{¶16}  Antero filed its answer on June 20, 2018.  Gulfport filed an answer and a counterclaim on July 2, 2018.  Gulfport's counterclaim sought declaratory judgment that the deed restrictions were void; the deed restrictions were unenforceable; if the deed restrictions were valid and enforceable, they only applied to the surface; and if the deed restrictions were valid and enforceable, OPWC was limited to monetary damages.

{¶17}  On October 11, 2018, Gulfport filed a motion for judgment on the pleadings. Gulfport argued that it was entitled to judgment on the pleadings for three reasons: the use restrictions in the deeds only applied to the surface; a one-half mineral interest was previously reserved on the Reservoir Project's real property (the Bewley mineral interest) and Gulfport obtained its interest in the Reservoir Project's minerals through the Bewley

mineral interest; and, pursuant to the enforcement restriction of the deeds, OPWC was limited to monetary damages.

{¶18} OPWC subsequently filed a motion for judgment on the pleadings. This motion argued that OPWC was entitled to judgment on the pleadings because the deed restrictions prohibited the Village from transferring any interest in the property and prohibited any use of the Reservoir Project and the Wetlands Project that was not open space. OPWC also argued that the enforcement restrictions did not limit its relief to liquidated damages.

{¶19} On the same day, Antero filed a motion for summary judgment. Antero's motion predominantly relied on the same arguments Gulfport raised in its motion for judgment on the pleadings. Antero argued that summary judgment in its favor was proper on OPWC's claims for injunctive relief and declaratory judgment with regard to the water lease because the water lease had expired and, therefore, the issue was moot. Antero also argued that it was entitled to summary judgment on OPWC's claim for monetary damages because the enforcement restrictions in the deeds were unenforceable as a matter of law.

{¶20} The Village also filed a motion for summary judgment. The Village argued that it was entitled to summary judgment on all of its affirmative defenses. The Village's affirmative defenses, however, are not relevant to this appeal.

{¶21} OPWC filed replies in opposition to the motions for judgment on the pleadings and summary judgment.

{¶22} The trial court held a hearing on all dispositive motions. On March 29, 2019, the trial court denied OPWC's motion for judgment on the pleadings, granted the Village's and Antero's motions for summary judgment, and granted Gulfport's motion for judgment on the pleadings.

{¶23} The trial court held that the use and alienation restrictions were unambiguous and only applied to the surface of the Projects. The trial court held that OPWC would be limited to monetary damages, if it was entitled to damages. But it went on to hold that OPWC did not put forth sufficient evidence to create a genuine issue of material fact to show appellees made use of the surface or that, even if there had been

Case No. 19 BE 0011

surface use, that it was damaged by the violations of the restrictions. Finally, the trial court specified that the alienation restriction did not apply to the subsurface.

**{¶24}** OPWC timely filed its notice of appeal on April 8, 2019. OPWC now raises two assignments of error. Appellees collectively filed two merit briefs: a joint brief from all appellees addressing OPWC's first assignment of error and a brief from Antero addressing OPWC's second assignment of error.

**{¶25}** OPWC's first assignment of error states:

THE TRIAL COURT ERRED IN (A) DENYING THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY THE OHIO PUBLIC WORKS COMMISSION, AND (B) GRANTING THE MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY GULFPORT ENERGY CORPORATION AND JOINED BY ANTERO RESOURCES CORPORATION.

**{¶26}** OPWC argues that the trial court erred in judgment on both its and Gulfport's motions for judgment on the pleadings. First, it argues that the deed restrictions for all the properties clearly and unambiguously restrict the transfer of any interest in the properties. Second, it argues that the deed restrictions permit it to seek equitable relief.

**{¶27}** The standard of review for the granting of a motion for judgment on the pleadings is the same standard used to review Civ.R. 12(B)(6) rulings. *Doolittle v. Shook*, 7th Dist. Mahoning No. 06 MA 65, 2007-Ohio-1412, ¶ 9. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is a procedural motion that tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In order for a trial court to dismiss the action, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. When making a determination on a Civ.R. 12 (B)(6) motion, a court must accept the facts as alleged within the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). If there are facts contained in the complaint that would permit recovery under the claims, the trial court cannot grant the motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio

St.3d 143, 144, 573 N.E.2d 1063 (1991). A reviewing court applies a de novo standard of review to the trial court's determination under Civ.R. 12(B)(6). *Ford v. Baska*, 7th Dist. Harrison No. 16 HA 0008, 2017-Ohio-4424, ¶ 6 citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

**{¶28}** OPWC's three causes of action all center on its claim for declaratory judgment that the leases granted by the Village violate the deed restrictions. Pursuant to R.C. 2721.03, an interested party under a deed "may have determined any question of construction or validity arising under the instrument * * * or other legal relations under it."

**{¶29}** OPWC attached to its complaint: copies of the Village's grant applications, copies of the project grant agreements between OPWC and the Village, copies of the deeds at issue, and copies of the leases or other interests the Village granted on the properties at issue. As it pertained specifically to Gulfport, OPWC's complaint contained a copy of the oil and gas lease and a copy of the water lease the Village executed in favor of Gulfport. The complaint alleged that any activity Gulfport made on the properties pursuant to these leases constituted a breach of the deed restrictions.

**{¶30}** If these allegations and all reasonable inferences from these allegations are viewed in OPWC's favor, OPWC's complaint shows that it would be entitled to declaratory judgment that Gulfport's leases with the Village were void because the leases violated the deed restrictions and that OPWC would be entitled to relief. Therefore, the trial court erred in granting Gulfport's motion for judgment on the pleadings

**{¶31}** As for OPWC's motion for judgment on the pleadings regarding Gulfport's counterclaim, Gulfport alleged that the Bewley mineral interest existed on the Reservoir Project's real property prior to the Village acquiring said real property. Gulfport then alleged that it acquired the rights to the Bewley mineral interest in three separate oil and gas leases all executed in November of 2016. Gulfport's counterclaim sought declaratory judgment that the deed restrictions were void due to the Bewley mineral interest; the deed restrictions were void as against public policy; alternatively, the deed restrictions applied solely to the surface; and the deed restrictions limited OPWC's relief to liquidated damages. If Gulfport's allegations and reasonable inferences therefrom are accepted as true, they show that Gulfport could be entitled to declaratory judgment that it was

permitted to exercise its rights to the Bewley mineral interest. Therefore, the trial court's judgment denying OPWC's motion for judgment on the pleadings was proper.

{¶32} In ruling on the motions for judgment on the pleadings, the trial court also found that both the use and development restrictions and the alienation restriction apply only to the surface and do not apply to the subsurface. And it found damages are the OPWC's exclusive remedy for any breach of the restrictions.

{¶33} We addressed these issues in *Siltstone Resources, LLC v. Ohio Pub. Works Comm.*, 7th Dist. Belmont No. 18 BE 0042, 2019-Ohio-4916, which involved very similar facts. In *Siltstone*, OPWC approved a $430,200 grant from the Clean Ohio Fund in favor of the Guernsey County Community Development Corporation (Guernsey) for the purpose of purchasing a 228.45 acre tract of land. *Id.* at ¶ 4-6. Per the terms of the grant, Guernsey was required to record several restrictions in the deed to the property. *Id.* at ¶ 6-7.

{¶34} The deed restrictions in *Siltstone* were very similar to the deed restrictions in this case. The only difference between the deed restrictions in *Siltstone* and this case are in the use and development restrictions. In *Siltstone*, the use and development restrictions stated:

> 1. Use and Development Restrictions. Declarant hereby agrees, for itself and its successors and assigns as owners of the Property, which Property shall be subject to the following: This property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this particular parcel. Only current structures will be maintained and no new structures will be built on the premises.

*Id.* at ¶ 7.

{¶35} Guernsey subsequently leased the property's oil and gas rights and sold approximately 216 mineral acres to third parties without OPWC's written permission. *Id.* at ¶ 9-12. This court held that the use and development restrictions were clear and unambiguous and only applied to the surface because the restrictions only prohibited actions that interfered with the property being used for a "green space park area," which

did not include the subsurface.  *Id.* at ¶ 42-46.  Therefore, the oil and gas lease and mineral sales did not violate the use and development restrictions.  *Id.* at ¶ 46.

**{¶36}**   But this court held that the restrictions on transfer of the property (the alienation restriction) did apply to the subsurface because the alienation restriction did not contain the "green space park area" modifier.  *Id.* at ¶ 50-54.  This court held that there was no genuine issue of material fact that Guernsey violated the alienation restriction by leasing the property's oil and gas rights and selling the property's mineral rights.  *Id.* at ¶ 50, 54.

**{¶37}**   As previously stated, the only difference between the two sets of deed restrictions lies in the use and development restrictions.  In *Siltstone*, the use and development restrictions state "[t]his property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this particular parcel.  Only current structures will be maintained and no new structures will be built on the premises."  *Id.* at ¶ 7.  In this case, the use and development restrictions state "[t]he Property shall only be used for open space with trails, and for passive recreational appurtenances."  Thus, the use and development restrictions in this case are stricter than in *Siltstone* because the restrictions in this case only permit the property to be used as open space with trails and for passive recreational appurtenances.

**{¶38}**   We held in *Siltstone* that the alienation restriction did apply to the subsurface.  As previously stated, the alienation restriction in this case is identical to the one in *Siltstone*.  Thus, the trial court erred in holding that the alienation restriction applies only to the surface.

**{¶39}**   In *Siltstone*, we also held that leasing or selling oil and gas and mineral rights did not violate the use and development restrictions.  *Id.* at ¶ 42-46.  But as previously stated, the use and development restrictions in this case are stricter than in *Siltstone* and bar any activity on the properties that is not consistent with (1) open space with trails and (2) passive recreational appurtenances.  Oil and gas leases and mineral leases are not consistent with open space, trails, or passive recreational appurtenances.  Therefore, the leases granted by the Village in this case also violate the use and development and alienation restrictions.

**{¶40}** As noted above, the trial court also found monetary damages would be OPWC's exclusive remedy if a breach of the restrictions existed. We also addressed this issue in *Siltstone* and found it to be without merit. *Id.* at. ¶ 68.

**{¶41}** Appellees argue that because there has been no oil and gas development or mineral extraction on the property, OPWC is not entitled to an injunction. This issue was also present in *Siltstone*. *Id.* at ¶ 14. Despite the fact that the property's surface in *Siltstone* was undisturbed, this court held that Guernsey's violation of the alienation restriction by leasing or selling interests in the property entitled OPWC to relief. *Id.* at ¶ 70. This court held in *Siltstone* that monetary damages and equitable relief were each possible remedies for a breach of the restrictions. *Id.* at ¶ 66-71. Likewise, for a breach of the restrictions in this case, monetary damages and equitable relief are each possible remedies.

**{¶42}** Accordingly, OPWC's first assignment of error has merit in part as it pertains to the trial court's judgment granting Gulfport's motion for judgment on the pleadings and is, therefore, sustained in part. OPWC's first assignment of error lacks merit in part as it pertains to the trial court's judgment denying its motion for judgment on the pleadings and is, therefore, overruled in part.

**{¶43}** OPWC's second assignment of error states:

THE TRIAL COURT ERRED IN GRANTING THE MOTIONS FOR SUMMARY JUDGMENT FILED BY THE VILLAGE OF BARNESVILLE AND ANTERO RESOURCES CORPORATION.

**{¶44}** OPWC argues that the act of the Village granting several leases on the Projects in favor of third-parties is sufficient evidence to create a genuine issue of material fact that the Village violated the deed restrictions for the properties of both Projects.

**{¶45}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

**{¶46}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party.

*Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶47}** For the reasons previously stated in appellant's first assignment of error, our resolution in *Siltstone* is dispositive of this assignment of error. Pursuant to *Siltstone*, the enforcement restrictions permit OPWC to seek monetary or equitable relief. This may include equitable relief against the Village and any party who has an interest in any lease on real property at issue in this appeal. Moreover, the use and development restrictions and the alienation restrictions in this case apply to both the surface and subsurface. Thus, the trial court's judgment on these issues was in error.

**{¶48}** Antero argues that OPWC is not entitled to any relief regarding the water lease because OPWC abandoned its claims regarding the water lease due to the lease's expiration during this action. Antero points to a sentence in OPWC's February 19, 2019 reply in opposition to Antero's motion for summary judgment that states "[w]hile the damages for injunctive relief were valid at the time of the filing of this complaint, the Commission abandons its pursuit for injunctive relief as it would be moot due to the expiration of the water lease."

**{¶49}** The sentence itself only states that OPWC was no longer pursuing injunctive relief regarding the water lease. We agree that there is no genuine issue of material fact that OPWC is not entitled to injunctive relief regarding the water lease because it has since expired and has not been renewed. But there is a genuine issue of material fact as to whether OPWC is entitled to other equitable or monetary relief regarding the water lease because the water lease itself was a violation of the deed restrictions.

Case No. 19 BE 0011

**{¶50}** Accordingly, OPWC's second assignment of error lacks merit in part as it pertains to injunctive relief regarding the water lease and is, therefore, overruled in part. The remainder of this assignment of error has merit and is sustained.

**{¶51}** For the reasons stated above, the trial court's judgment granting Gulfport's motion for judgment on the pleadings is hereby reversed. The trial court's judgment denying OPWC's motion for judgment on the pleadings is hereby affirmed. The trial court's judgment granting summary judgment in favor of Antero is hereby affirmed as it pertains to OPWC's claim for injunctive relief regarding the water lease only. The trial court's judgment granting summary judgment in favor of Antero and the Village is hereby reversed on all other issues. This matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.

Waite, P. J., concurs.
Robb, J., dissents with dissenting opinion.

Robb, J., dissents with dissenting opinion

{¶52} I respectfully dissent from the decision reached by my colleagues. I would affirm the trial court's conclusion that both the Use and Development Restriction and Alienation Restriction at issue only applied to the surface, not the subsurface.

{¶53} The majority holds the Use and Development Restriction and Alienation Restriction apply to both the surface and subsurface. Opinion ¶ 38-39. In coming to this determination, the majority relied on this court's analysis *Siltstone Resources, LLC v. Ohio Pub. Works Commission*, 2019-Ohio-4916, 137 N.E.3d 144 (7th Dist.), *appeal allowed sub nom, Siltstone Resources, L.L.C. v. Ohio Pub. Works Comm.*, 158 Ohio St.3d 1443, 2020-Ohio-1032. I disagree with the majority's conclusion that both restrictions apply to the subsurface.

{¶54} Starting with the Use and Development Restriction, in *Siltstone*, this restriction stated, "[t]his property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this particular parcel. Only current structures will be maintained and no new structures will be built on the premises." *Siltstone*, 2019-Ohio-4916 at ¶ 7. The restriction at issue here states, "[t]he Property shall only be used for open space with trails and for passive recreational appurtenances." Opinion ¶ 6. While the majority contends the Use and Development Restriction at hand is stricter than the one in *Siltstone* and bars oil, gas, and/or mineral leases, I disagree. Open space with trails and passive recreational appurtenances is equivalent to a green space park area. In *Siltstone*, we explained that the phrase "green space park area" is the portion of the property one would use for walking, running, biking and hiking. *Siltstone*, 2019-Ohio-4916 at ¶ 43. Thus, the limitation of green space was to the surface of the property. That same analysis applies here. Open space with trails is a limitation on the surface of the property. Likewise, passive recreational activities includes nonmotorized vehicles, walking, hiking, bird watching, picnicking, fishing, etc. These activities are limited to the surface of the property. Therefore, the limitations in this deed is equivalent to "green space park area." *Siltstone* supports this conclusion. In that case, we went as far as to explain that green space in the rural setting is preserving areas of nature from development or reclaiming

Case No. 19 BE 0011

areas of nature that were used for industry; "In northeast Ohio, unused railways are converted to trails and land stripped from mining is reclaimed." *Id.* at ¶ 42. Consequently, while it may be arguable that the limitation in the case at hand is stricter in its limitations as to what can be done to the surface than the limitation was in *Siltstone*, the limitation is still clearly only applicable to the surface.

**{¶55}** As to the Alienation Restriction, as the majority points out the Alienation Restriction in this case is identical to the Alienation Restriction in *Siltstone*. Opinion ¶ 38. In *Siltstone*, this court concluded the Alienation Restriction applied to surface and subsurface, and as such, Guernsey violated the restriction when it leased and/or sold mineral, gas, and oil interests without OPWC's consent. *Siltstone*, 2019-Ohio-4916 at ¶ 47-54. I dissented to that determination and concluded that the restriction was an unreasonable restraint on the alienation of the property. *Id.* at ¶ 74-78 (Robb, J., dissenting). In *Siltstone*, I explained and reasoned:

> The Alienation Restriction specifically refers to Appellant OPWC. It is undisputed that Appellee Guernsey applied for a grant from the Clean Ohio Conservation Fund for the purposes of utilizing the space as a green space park area; its application for the fund clearly sets forth what improvements it was making for the property and its use. Therefore, although this restriction does not use the term "green space park area," the reference to Appellant OPWC indicates the purpose of the restriction is to maintain it for the purposes that the grant was awarded to Appellee Guernsey. As discussed above, green space refers only to surface. While it was permissible to restrain the use of the surface and require consent for transfers of the surface, it is unreasonable to require approval for transfers of the subsurface and permit Appellant OPWC to refuse, for any reason, the transfer of the subsurface. This is especially the case in this instance where the Use and Development Restriction runs with the land. This holding is the least restrictive interpretation of the covenant and reinforces the public policy for the development of oil and gas production. *Newbury Twp. Bd. of Twp. Trustees v. Lomak Petroleum (Ohio), Inc.,* 62 Ohio St.3d 387, 389,

583 N.E.2d 302 (1992) ("It is the public policy of the state of Ohio to encourage oil and gas production when the extraction of those resources can be accomplished without undue threat of harm to the health, safety and welfare of the citizens of Ohio.").

*Id.* at ¶ 76 (Robb, J., Dissenting).

**{¶56}** This analysis is applicable in this case because in addition to the restrictions being identical, the facts in these two cases are very similar. Here, like in *Siltstone*, it is undisputed that the Village applied for a grant from the Clean Ohio Fund for the purpose of preserving the land as open space. Although the restriction does not use the terms "open space with trails" and/or "passive recreational appurtenances," the reference to OPWC indicates the purpose of the restriction is to maintain it for the purposes that the grant was awarded. As I reasoned above, that restriction of open space with trials and for passive recreation is only a restriction on the surface.

**{¶57}** Considering that the restrictions in the cases are identical and the facts are very similar, I stand by my analysis in *Siltstone* and would hold the Alienation Restriction is an unreasonable restraint on the subsurface. As such, that restriction is only applicable to the surface and the leasing and/or selling of mineral, oil, and/or gas interests is permitted.

**{¶58}** In conclusion, I would affirm the trial court's decision in so far as it holds that the Use and Development Restriction and Alienation Restriction only apply to the surface. Since, in my opinion, there is no breach of the restrictions, the issue of damages is moot and I would not address it.

---

For the reasons stated in the Opinion rendered herein, OPWC's first assignment of error is overruled in part as it pertains to the trial court's judgment on OPWC's motion for judgment on the pleadings and is sustained in part as it pertains to Gulfport's motion for judgment on the pleadings. OPWC's second assignment of error is overruled in part as it pertains to injunctive relief regarding the water lease and the remainder of this assignment has merit and is sustained. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, granting Gulfport's motion for judgment on the pleadings is hereby reversed. The judgment denying OPWC's motion for judgment on the pleadings is hereby affirmed. The judgment granting summary judgment in favor of Antero is hereby affirmed as it pertains to OPWC's claim for injunctive relief regarding the water lease only. The judgment granting summary judgment in favor of Antero and the Village is hereby reversed on all other issues. This matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**