[Cite as *Jay Realty v. J.P.S. Properties Diversified, Inc.*, 2024-Ohio-2458.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAY REALTY, L.L.C., :

      Plaintiff-Appellee/ :
      Cross-Appellant,

       :       No. 112554

      v.

       :

J.P.S. PROPERTIES DIVERSIFIED,
INC., :

      Defendant-Appellant/ :
      Cross-Appellee.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 27, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-946236

---

### *Appearances:*

Tucker Ellis LLP, John P. Slagter, Anthony R. Vacanti, Lindsey E. Sacher, and Hannah M. Smith; Koblentz & Penvose, LLC, and Richard S. Koblentz, *for appellee/cross-appellant.*

Taft Stettinius & Hollister LLP, David H. Wallace, and Kelsey Hughes-Blaum, *for appellant/cross-appellee.*

MARY EILEEN KILBANE, J.:

{¶ 1} J.P.S. Properties Diversified, Inc. ("JPS") and Jay Realty, L.L.C. ("Jay

Realty") each appeal from the trial court's judgment entry that ruled on the parties'

competing motions for summary judgment. After reviewing the facts of the case and pertinent law, we reverse and remand for proceedings consistent with this opinion.

## I.    Facts and Procedural History

{¶ 2}    This dispute involves a parcel of real property located in Solon (the "Jay Property"), which is situated next to Sedlak Interiors ("Sedlak").  Sedlak is a furniture store that has been owned and run by the Sedlak family for over 75 years. Sedlak is in the business of selling furniture, carpeting, rugs, lamps, accessories, clocks, fabric, and wallpaper.  Sedlak discontinued the sale of the following products at least five years prior to this litigation:  televisions, VCRs, microwave ovens, dryers, washers, ranges, freezers, and refrigerators.

{¶ 3}    JPS, which is also owned and operated by the Sedlak family, acquired the Jay Property, as well as the adjacent property on which Sedlak operates (the "Sedlak Property"), in the 1980s.  In 1998, JPS sold the Jay Property to Franklin Park and retained title to the Sedlak Property.

{¶ 4}    At the heart of this case is a restrictive covenant (the "Use Restriction"), which was attached to the Jay Property deed at the time of the 1998 transfer.  The Use Restriction states, in pertinent part, that the owner

> shall not permit the use of such premises by any person, firm, entity or other organization (a) which is engaged in the sale or rental of furniture, home furnishings, rugs, bedding, carpeting, mattresses, clocks, lamps, lighting fixtures, wallpaper, fabric, window treatments or household appliances (including refrigerators, freezers, ranges, washers, dryers, microwave ovens, televisions, or VCRs), or (b) for the ownership and/or operation of a large discount store (including without limitation K-Mark (sic), Wal-Mart, Target or similar operation) . . . .

For ease of discussion, the above-named products will be referred to throughout this opinion as "Home Furnishings." The Use Restriction further states that "[s]uch restriction . . . shall run with the land and shall be binding on and inure to the benefit of all parties having any right, title or interest in the" Jay Property.

{¶ 5} John Sedlak ("John") imposed the Use Restriction in 1998 to prevent competitors, who sell the same products as Sedlak, from potentially operating at the neighboring Jay Property. John also did not want a "big, boxy building without windows" situated on the adjacent property to his business. Jeff Sedlak's deposition, p. 186. Sedlak does not conduct online sales.

{¶ 6} Over the years, the Jay Property was subject to various transfers and each transfer maintained the Use Restriction. Fast forward to December 4, 2014, when the Jay Property was transferred to Jay Realty, who began marketing the property for sale. In 2019, Jay Realty entered into an agreement to sell the Jay Property to Scannell Properties, LLC ("Scannell"), a developer of warehouses and fulfillment centers, with the intent to develop the property for use as an Amazon fulfillment center (the "Fulfillment Center"). Scannell proposed that the Fulfillment Center would represent "a 293,584 square foot commercial/industrial building on the [Jay] Property suitable for the uses that may include warehousing, manufacturing, shipping of goods, fulfillment of sales made online, and other uses of a non-retail nature." Marc Pfleging Affidavit. The sale of the property was not finalized due to Scannell's concern that the use of the property as an Amazon Fulfillment Center would be in contradiction to the Use Restriction.

{¶ 7}　On April 12, 2021, Jay Realty — the owner of Jay Property — filed a lawsuit against JPS — the former owner of the property that created the Use Restriction — based upon the alleged ambiguity of the Use Restriction and how it may prevent Scannell's development of the Jay Property as a Fulfillment Center. The complaint sought a declaratory judgment "to determine the validity and construction of the Use Restriction . . . ." Specifically, Jay Realty requested that the court declare the Use Restriction "unenforceable and null and void," or alternatively, declare that JPS "does not have the right to enforce the Use Restriction, that the Use Restriction does not prohibit the Proposed Uses[,] and the extent of the Use Restriction[.]" The complaint also alleged a quiet title cause of action, requesting that the court "render the Use Restriction unenforceable, null and void, and to allow for the Proposed Uses."

{¶ 8}　Jay Realty's complaint defined the "Proposed Uses" for the Fulfillment Center, as related to its declaratory judgment and quiet title causes of actions, as follows:

> receiving, storing, warehousing, serving as a pick-up/drop-off location, shipping and distribution of . . . products, and as a fulfillment center for sales of . . . products made online or from other locations, including, without limitation, assembling, preparing (including making products on demand), and handling . . . products prior to delivery or pickup, and incidental point-of-sale transactions shall be permissible from the Property without restriction; and . . . any occupant(s) of the Property may sell or lease . . . products online or from locations other than the Property.

Complaint, ¶ 21.

**{¶ 9}** In April 2022, the parties filed competing summary judgment motions ("MFSJ"). On February 24, 2023, the court granted summary judgment in favor of Jay Realty and against JPS on both the declaratory judgment and quiet title actions. Specifically, the court declared:

> [Jay Realty's] motion for summary judgment, filed 6/9/2022, is granted. [JPS's] motion for summary judgment, filed 4/28/2022, is denied. [Jay Realty's] motion for summary judgment is granted.
>
> Upon review of the submitted briefing and relevant case law, the court finds the following: as it relates to Count I of [Jay Realty's] complaint, this court enters a declaration that the use restriction at issue is not enforceable as to the parties' instant dispute. The use restriction is clear, unambiguous, and does not lead to an absurd result and, therefore there is no need to entertain outside evidence to assist this court with its interpretation. The court finds that summary judgment in favor of . . . Jay Realty . . . is warranted as the plain language of the use restriction at issue does not apply to prohibit the use proposed by [Jay Realty's] interested buyer. The plain language of the use restriction concerns the use of the property and not the off-site activities of the owner or user of the property. As such, the court finds that the language of the use restriction does not prohibit the proposed use and judgment in favor of [Jay Realty] is warranted on the claim contained in Count one of [Jay Realty's] complaint.
>
> As it relates to Count II, that this court enter a judgment against . . . JPS . . . quieting title to the fee simple interest in the property and allowing the Proposed Uses.

February 24, 2023 judgment entry.

**{¶ 10}** On March 3, 2023, the court sua sponte issued a nunc pro tunc entry ("March 3, 2023 judgment entry") to purportedly correct the February 24, 2023 judgment entry. In the March 3, 2023 judgment entry, the trial court maintained that summary judgment was granted on Jay Realty's behalf on Count 1, declaratory judgment, but denied Jay Realty's summary judgment on Count 2, quiet title, and

instead granted JPS's summary judgment motion on the quiet title action, stating that "[t]he Use Restriction was not extinguished by merger, and the Use Restriction has not been terminated."

{¶ 11} It is from these journal entries that JPS appeals, raising the following assignment of error:

> The trial court erred in determining that the [U]se [R]estriction at issue does not apply to prohibit the "Proposed Uses" as defined in the complaint and granting summary judgment in Jay Realty's favor on [the declaratory judgment claim] of the complaint.

{¶ 12} Additionally, Jay Realty filed a cross-appeal, raising the following cross-assignments of error:

> I. The trial court erred by sua sponte reversing its February 24, 2023 order granting summary judgment on Count II of the complaint (Jay Realty's claim for quiet title) in favor of Jay Realty via an improper nunc pro tunc order.
>
> II. The trial court erred in granting summary judgment in its March 3, 2023 order, in favor [of] J.P.S. Properties Diversified on Count II of the complaint because the [U]se [R]estriction terminated by its own terms, is unenforceable by J.P.S., and /or cannot be enforced against Jay Realty.

{¶ 13} For ease of discussion, we address these assignments of error out of order.

## II. Law and Analysis

### A. Nunc Pro Tunc

{¶ 14} Our analysis begins with Jay Realty's first cross-assignment of error, which concerns the trial court's nunc pro tunc judgment entry issued on March 3, 2023.

**{¶ 15}** As detailed above, the trial court's February 24, 2023 judgment entry granted Jay Realty's motion for summary judgment on both Count 1, declaratory judgment, and Count 2, quiet title, and, therefore, denied JPS's motion for summary judgment. Inexplicably, the trial court's March 3, 2023 nunc pro tunc entry granted Jay's Realty's motion for summary judgment only on Count 1 and granted JPS summary judgment on Count 2. We find the March 3, 2023 judgment entry was an improper use of a nunc pro tunc entry.

**{¶ 16}** This court has previously explained the use of nunc pro tunc entries as follows:

> "'A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors.

> A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide.'"

*Alden v. FirstEnergy Corp.*, 2014-Ohio-3235, ¶ 10 (8th Dist.), quoting *Scaglione v. Saridakis*, 2009-Ohio-4702, ¶ 9 (8th Dist.), quoting *State v. Greulich*, 61 Ohio App.3d 22, 24-25 (9th Dist. 1988); *see also* Civ.R. 60(A) (permitting a court, in its discretion, to sua sponte correct "clerical mistakes" and "errors . . . arising from

oversight or omission"). In short, a trial court cannot use a nunc pro tunc order "as a vehicle for changing its decision." *Alden* at ¶ 12.

{¶ 17} In the case at hand, the trial court's sua sponte March 3, 2023 judgment entry improperly changed the court's February 24, 2023 decision. *See Dickerson v. Cleveland Metro. Hous. Auth.*, 2011-Ohio-6437, ¶ 19 (8th Dist.), citing *RPM, Inc. v. Oatey Co.*, 1998 Ohio App. LEXIS 5862 (9th Dist. Dec. 9, 1998) ("[A] trial court cannot sua sponte vacate a previous order granting summary judgment under Civ.R. 60(A) . . . ."). The trial court incorrectly issued a nunc pro tunc judgment entry, thereby vacating its grant of summary judgment on Count 2 to Jay Realty and rendering a new order granting summary judgment on that count to JPS.

{¶ 18} Thus, Jay Realty's first cross-assignment of error is sustained, and accordingly, the trial court's March 3, 2023 judgment entry is vacated.

{¶ 19} Pursuant to this court's vacation of the March 3, 2023 judgment entry, Jay Realty's second cross-assignment of error challenging a portion of the March 3, 2023 judgment entry is rendered moot. *See* App.R. 12(A)(1)(c).

{¶ 20} The remainder of our analysis concerns the trial court's February 24, 2023 judgment entry, which granted summary judgment in favor of Jay Realty in toto.

**B.    Motion for Summary Judgment**

{¶ 21} Appellate review of a decision granting summary judgment is de novo. *Barley v. Fitcheard*, 2008-Ohio-6159, ¶ 12 (8th Dist.). Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine

issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 1996-Ohio-107.

{¶ 22} Further, "[t]he construction of written contracts and instruments, including deeds, is a matter of law." *Long Beach Assn. v. Jones*, 1998-Ohio-186; s*ee also Siltstone Resources, L.L.C. v. Ohio Public Works Comm.*, 2019-Ohio-4916, ¶ 29 (7th Dist.) ("Contract construction rules apply to the interpretation of . . . deed restrictions."). "Questions of law are reviewed de novo." *Long Beach Assn.*, citing *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St. 3d 321, 322 (1984). "In a de novo review, we afford no deference to the trial court's decision and independently review the record to determine whether the trial court's judgment is appropriate." *Choice Hotels Internatl., Inc. v. C&O Developers, L.L.C.*, 2022-Ohio-3234, ¶ 20 (8th Dist.).

{¶ 23} Jay Realty sought summary judgment on Count 1, declaratory judgment, and Count 2, quiet title. We will discuss the counts in reverse order.

### C. Quiet Title

{¶ 24} Pursuant to R.C. 5303.01, an "action may be brought by a person in possession of real property . . . against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." Ohio courts have held that the "purpose of any quiet title action is to conclusively determine the allocation of property interests." *Ochsenbine v. Cadiz*, 2005-Ohio-6781, ¶ 13 (7th Dist.). "The burden of proof in a quiet title action rests with the complainant as to

all issues which arise upon essential allegations of his complaint." *Duramax, Inc. v. Geauga Cty. Bd. of Commrs.*, 106 Ohio App.3d 795, 798 (11th Dist. 1995).

{¶ 25} In its summary judgment motion, Jay Realty's argument regarding its quiet title action is twofold: Jay Realty is entitled to an order quieting title to the Jay Property on the grounds that the Use Restriction is of no force or effect because either (1) the Use Restriction never became effective, or (2) the Use Restriction terminated years ago.

### 1. The Use Restriction Never Became Effective

{¶ 26} To support its argument that the Use Restriction never became effective, Jay Realty cites to "the doctrine of merger by ownership." According to Jay Realty, this "doctrine provides [that] when the owner of one property imposes a restriction upon another property, and subsequently becomes the owner of the restricted property as well, the previously imposed restriction is extinguished. This doctrine is based on the concept that the owner of real property cannot place a restriction on itself." Jay Realty's motion for summary judgment ("MFSJ"), p. 18.

{¶ 27} Jay Realty argues that this doctrine applies to the case at hand because JPS owned both the Sedlak Property and the Jay Property. Specifically, according to Jay Realty, the 1998 deed that imposed the Use Restriction conveyed the Jay Property from JPS to a company called Franklin Park. According to Jay Realty, JPS owned a 75 percent interest in Franklin Park, and this is "no different from JPS attempting to restrict its own use of the [Jay] Property." Jay Realty's MFSJ, p. 18. Jay Realty further argues that in 2001, Franklin Park conveyed "a fee

simple absolute interest in the [Jay] Property back to JPS by way of a deed . . . . At that time, JPS had a fee simple absolute interest in both the [Jay] Property [that was] allegedly burdened by the Use Restriction, and the Sedlak Property that JPS claims was benefitted by the Use Restriction."  Jay Realty's MFSJ, p. 18.

{¶ 28} To support this argument, Jay Realty cites *Shah v. Smith*, 2009-Ohio-743 (1st Dist.).  According to Jay Realty, *Shah* stands for the following legal proposition: "a servitude becomes extinguish[ed] where the dominant and servient estates come into the ownership of the same party."  Jay Realty's MFSJ, p. 18.

{¶ 29} Our review of *Shah* shows that the doctrine of merger by ownership applies to easements.  "Thus, an easement is extinguished by merger when the dominant and servient tenements come into the ownership of the same party."  *Id.* at ¶ 11.  As the *Shah* Court explained, "[T]here is no reason for an owner to hold an easement against himself."  *Id.* at ¶ 12.

{¶ 30} "An easement is an interest in the land of another . . . that entitles the owner of the easement to a limited use of another's land in which the interest exists."  *Miller v. Romanauski*, 2014-Ohio-1517, ¶ 15 (8th Dist.).

{¶ 31} A use restriction, on the other hand, is a "restrictive covenant" that is "'a private agreement, usu[ally] in a deed or lease, that restricts the use or occupancy of real property, esp[ecially] by specifying . . . the uses to which the property may be put.'"  *Canton v. State*, 2002-Ohio-2005, ¶ 28, quoting *Black's Law Dictionary* 371 (7th Ed. 1999).

{¶ 32} Easements and use restrictions are two different types of interests in real property, and we decline to extend the application of the "doctrine of merger by ownership" to use restrictions.

## 2. The Use Restriction Has Terminated

{¶ 33} Jay Realty's next argument centers around the self-termination provision contained within the Use Restriction. The self-termination provision reads:

> [T]his restriction will cease to be in force and effect if the property currently occupied by Sedlak Interiors . . . is no longer used as a business engaged in the sale of one or more of the foregoing products for a period of 365 consecutive days or longer, except when such failure is caused by labor disputes, force majeure or conditions beyond the control of the occupant.

The "foregoing products" referenced in the provision are the Home Furnishings listed in the Use Restriction that include "furniture, home furnishings, rugs, bedding, carpeting, mattresses, clocks, lamps, lighting fixtures, wallpaper, fabric, window treatments or household appliances (including refrigerators, freezers, ranges, washers, dryers, microwave ovens, televisions or VCRs)."

{¶ 34} The parties offer different interpretations of the self-termination provision. Jay Realty argues that because Sedlak has discontinued selling one or more of the itemized Home Furnishings for at least 365 days — specifically, appliances — the self-termination provision applied, and the Use Restriction lapsed. As noted previously in this opinion, Sedlak has not sold household appliances in more than five years.

{¶ 35} JPS argues instead that the "plain language of the Use Restriction supports that it was intended to remain in force so long as the [Sedlak Property] is 'used as [a] business engaged in the sale of one or more of the [listed] products.'" JPS's Court of Appeals reply brief, p. 16. According to JPS, "Because Jay Realty's termination argument relies on a construction of the Use Restriction that leads to an absurd result and contradicts its clear intent, the trial court did not err in rejecting it." *Id.* at p. 17.

{¶ 36} We agree with JPS. Under Jay Realty's scenario, because Sedlak stopped selling appliances for greater than 365 days, the Use Restriction lapsed and any retailer of Home Furnishings can purchase the Jay Property and compete, side by side, with Sedlak. Such an interpretation is unreasonable, and we decline to interpret the Use Restriction and its self-terminating language in that manner. We find that if Sedlak sells at least one of the enumerated Home Furnishings, the Use Restriction remains intact. A plain reading of the self-termination provision shows that the Use Restriction has not terminated because Sedlak continues to sell many of the Home Furnishings listed in the provision.

{¶ 37} For the foregoing reasons, we find Jay Realty is not entitled to judgment as a matter of law on the issue of quiet title. Thus, the trial court erred when it granted Jay Realty's motion for summary judgment on Count 2, quiet title.

**D. Declaratory Judgment**

{¶ 38} Pursuant to R.C. 2721.02(A), "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.

. . . The declaration may be either affirmative or negative in form and effect. The declaration has the effect of a final judgment or decree." Pursuant to R.C. 2721.03, "any person interested under a deed . . . may have determined any question of construction or validity arising under the [deed] and obtain a declaration of rights, status, or other legal relations under it."

{¶ 39} The Use Restriction states that the Jay Property "shall not permit the use of such premises" by an entity that "is engaged in the sale or rental" of Home Furnishings. Jay Realty argued that it was entitled to summary judgment on its declaratory judgment claim because the Use Restriction does not prohibit the proposed use of the Jay Property. Specifically, Jay Realty argued that the plain, clear language of the Use Restriction prohibits the use of the Jay Property "by an entity engaged in the sale of [Home Furnishings] on or from the property, as opposed to an entity engaged in the sale of [Home Furnishings] elsewhere or virtually." Jay Realty MFSJ, p. 9. Further, Jay Realty contended that the Use Restriction limits only the sale of Home Furnishings; a Fulfillment Center is not a sales facility and, thus, is not subject to the restriction. In opposition, JPS argued the trial court should deny Jay Realty's summary judgment motion because the unambiguous language of the Use Restriction and Ohio precedent prohibit the Proposed Use of the Fulfillment Center. Specifically, JPS challenged that the use of the property by any entity, including Amazon, who sells Home Furnishings in any setting is prohibited under the restriction.

{¶ 40} "When interpreting a deed, the primary goal of this court is to look to the terms of the deed to give effect to the intentions of the parties." *Ohio Pub. Works Comm. v. Barnesville*, 2022-Ohio-4603, ¶ 32. A court similarly analyzes the language in a restrictive covenant. *Thomarios v. Hardy Invest. Assocs.*, 2017-Ohio-7597, ¶ 13 (9th Dist.). To do so, a court must "look at the words found within the four corners of the deed [or restrictive covenant] . . . and . . . adhere to the plain language used there." *Id.*

> Courts must give the words used in a restrictive covenant their common and ordinary meaning. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978) paragraph two of the syllabus. In addition, a court must read the restrictive covenant as a whole. *LuMac Dev. Corp. v. Buck Point Ltd. Partnership*, 61 Ohio App.3d 558, 563, 573 N.E.2d 681 (6th Dist. 1988).

*Thomarios* at ¶ 13. "'Where the language in the restriction is clear, the court must enforce the restriction.'" *Royal Valley Homeowners Assn. v. Pietrovito*, 1993 Ohio App. LEXIS 5871, * 6 (8th Dist. Dec. 9, 1993), quoting *Dean v. Nugent Canal Yacht Club, Inc.*, 66 Ohio App.3d 471, 475 (6th Dist. 1990). To act otherwise would result in the court rewriting the restriction. *Royal Valley Homeowners Assn.* at 6, quoting *Dean* at 475, citing *Cleveland Baptist Assn. v. Scovil*, 107 Ohio St. 67, 72 (1923).

{¶ 41} Courts should avoid interpretations that render terms or phrases superfluous or meaningless. *Capital City Community Urban Redevelopment Corp. v. Columbus*, 2009-Ohio-6835, ¶ 30 (10th Dist.). Additionally, "if a [deed's] language is clear and unambiguous, and not subject to multiple interpretations, the court will not consider extrinsic evidence, or evidence outside of the four corners of

the document, to re-interpret the [deed's] terms." *Headley v. Ackerman*, 2017-Ohio-8030, ¶ 35 (7th Dist.), citing *Love v. Beck Energy Corp.*, 2015-Ohio-1283, ¶ 21 (7th Dist.); *Rice v. Rice*, 2002-Ohio-3459, ¶ 44 (7th Dist.) ("[A] deed is a contract").

{¶ 42} A review of the Use Restriction demonstrates that the terms are unambiguous, and therefore, we rely on the language contained therein — rather than extrinsic evidence — to give effect to the Use Restriction's intent. The Use Restriction contains two separate prohibitions: (1) the use of the Jay Property by any entity that is engaged in the sale or rental of Home Furnishings, or (2) the use of the premises by any entity for the ownership and/or operation of a large discount store such as a Wal-Mart, Target, or similar operation. For purposes of this opinion, we do not find Amazon comparable to Wal-Mart or Target. The first prohibition — the proposed use of the property by an entity that sells Home Furnishings — is applicable to the instant matter.

{¶ 43} We interpret the Use Restriction to prohibit entities that sell or rent Home Furnishings from owning the Jay Property. Amazon sells Home Furnishings such as those sold by Sedlak and delineated in the Use Restriction. Amazon is the type of entity the Use Restriction attempts to preclude from operating next door to Sedlak. The fact that Amazon currently intends to use the property as a Fulfillment Center rather than a retail center and that Amazon's sales are generally virtual are immaterial. This is evident when the potential buyer, Scannell, did not finalize the deal for Jay Property because of the existing Use Restriction. The plain language of the Use Restriction states the sale of the Jay Property shall not permit the use of

such premises by an entity engaged in the sale of Home Furnishings and this includes Amazon. Thus, the Use Restriction prohibits the Proposed Use of the Jay Property as an Amazon Fulfillment Center and the trial court erred when it found the Use Restriction did not apply to the Proposed Use of Jay Property as a Fulfillment Center.

{¶ 44} In its motion for summary judgment, Jay Realty also challenged that JPS had no interest in the Jay Property and, therefore, had no right to enforce the Use Restriction. The Use Restriction specifically states that the Jay Property will be sold and conveyed subject to the enumerated restrictions and the restrictions "shall run with the land and shall be binding on and inure to the benefit of all parties having any rights, title or interest in the [Jay Property.]" A review of the parties' arguments demonstrates that Jay Realty's contention lacks merit. *See Berger v. Van Sweringen Co.*, 6 Ohio St.2d 100, 102, (1966); *Rehard v. Rini*, 128 N.E.2d 451 (8th Dist. 1955).

{¶ 45} We find that the trial court erred when it granted Jay Realty's summary judgment on its declaratory judgment action and, as stated previously, when it granted Jay Realty's summary judgment on the quiet title claim. Accordingly, we sustain JPS's sole assignment of error.

**E. Mootness**

{¶ 46} During the pendency of this appeal, the parties filed the following with this court:

> • November 17, 2023 — JPS filed a "notice of presentment of additional authority at oral argument."

• November 20, 2023 — JPS filed a "motion for leave to file under seal" and a "notice of filing affidavit."

• November 27, 2023 — Jay Realty filed a "motion to strike [JPS's] notice of presentment of additional authority at oral argument."

{¶ 47} While JPS titled its pleading as a notice of presentment of additional authority, JPS did not ask this court to consider new case law, but a new theory of the case. Through the above-referenced filings, JPS argued that the declaratory judgment claim was moot due to expiration of the purchase agreement Jay Realty entered into with Scannell and sought to incorporate the purchase agreement, an affidavit, and deposition testimony into the appellate record. JPS admits in its notice of additional authority that the "most recent iteration of the purchase agreement" is "not in the summary judgment record."

{¶ 48} App.R. 21(I) governs the citation of additional authorities on appeal, and it states as follows: "If counsel on oral argument intends to present authorities not cited in the brief, counsel shall, at least five days prior to oral argument, present in writing such authorities to the court and to opposing counsel, unless there is good cause for a later presentment."

{¶ 49} Upon review, we find the introduction of the proffered documents are not "additional authority" as contemplated by App.R. 21(I) and JPS is not entitled to introduce them. Further, we find a party is not permitted to present a new assignment of error that was not raised in the appellate brief. *See, e.g., Deutsche Bank Trust Co. Americas v. Ziegler*, 2014-Ohio-471, ¶ 21 (2d Dist.) ("[W]e conclude

that Ziegler is not actually seeking to submit additional authorities to aid our decision on the assignment of error that has been raised; instead, he is asking us to consider an additional argument that was never presented to the trial court and was not assigned as an error in his appellate brief.").

{¶ 50} Accordingly, Jay Realty's motion to strike JPS's notice of additional authority is granted; JPS's motion for leave to file under seal is denied; and JPS's notice of additional authority is stricken.

## III. Conclusion

{¶ 51} The trial court erred in issuing the March 3, 2023 judgment entry and, thus, the March 3, 2023 judgment entry is vacated. The trial court's February 24, 2023 judgment entry — that granted Jay Realty's summary judgment on both Counts 1 and 2 — remains the final order in this case. The case is remanded to the trial court with instructions to issue a journal entry vacating the March 3, 2023 judgment entry. Pursuant to the vacation of the March 3, 2023 judgment entry, Jay Realty's first cross-assignment of error — that argued the trial court erred when it issued the March 3, 2023 order — is sustained and Jay Realty's second cross-assignment of error — that argued the trial court's March 3, 2023 judgment entry erroneously granted JPS's summary judgment on Count 2 — is rendered moot. We also find the trial court erred in granting summary judgment to Jay Realty through its February 24, 2023 judgment entry and, therefore, JPS's sole assignment of error is sustained, and the matter is reversed and remanded. As to the pleadings filed with this court, Jay Realty's motion to strike JPS's notice of additional authority is

granted; JPS's motion for leave to file additional authority under seal is denied; and JPS's notice of additional authority is stricken.

{¶ 52} Judgment reversed and remanded for proceedings consistent with this opinion.

It is ordered that the parties split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
LISA B. FORBES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

LISA B. FORBES, J., CONCURRING IN PART AND DISSENTING IN PART WITH SEPARATE OPINION:

{¶ 53} I concur with the majority's opinion regarding the issues of quiet title and mootness. I respectfully dissent from the majority's opinion regarding the declaratory judgment action and would instead find that JPS's Use Restriction does not prohibit Jay Realty's Proposed Use of the Jay Property.

{¶ 54} Unlike the majority, I would find that the language in the Use Restriction is ambiguous. This ambiguity manifests itself in that the trial court

concluded that the Use Restriction did not prohibit the Proposed Use and the majority of this opinion concludes that the Use Restriction prohibits the Proposed Use.

{¶ 55} The Ohio Supreme Court has held that "[w]here the words of a restriction contained in a deed of conveyance are equally capable of two or more different constructions, that construction will be adopted which least restricts the free use of the land." *Loblaw, Inc. v. Warren Plaza, Inc.*, 163 Ohio St. 581, 592 (1955). *See also Cleveland Botanical Garden v. Drewien*, 2020-Ohio-1278, ¶ 24 (8th Dist.), quoting *Corna v. Szabo*, 2006-Ohio-2764, ¶ 39 (6th Dist.) ("If the deed restriction is 'indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land.'"); *Frederick v. Cocca Dev. Ltd.*, 2006-Ohio-7273, ¶ 46 (7th Dist.) ("Resort to . . . extrinsic evidence is not required . . . to resolve the ambiguity. Rather, the ambiguity is automatically read in favor of the party who argues for free use of his land.").

{¶ 56} The *Frederick* Court further explained that "ambiguity in a restrictive covenant does not require the court to determine intent or find a genuine issue for trial, but rather requires the court to grant judgment in favor of the one arguing against application of the restriction." *Id*. at ¶ 48. Additionally, the *Frederick* Court stated that "[i]n a typical written instrument case, ambiguous language and opposing claims of intent would be a question for trial. In a restrictive covenant case, the ambiguous language requires a legal finding against the restriction, regardless of parol evidence of intent." *Id*. at ¶ 49.

**{¶ 57}** With the goal of the least restrictive use of the Jay Property in mind, this court is required to hold that the Proposed Uses as a fulfillment center in the case at hand do not violate the Use Restriction at issue because they do not constitute "engag[ing] in the sale . . . of . . . home furnishings . . . ." Accordingly, I would find that the court did not err in granting summary judgment in favor of Jay Realty and overrule JPS's sole assignment of error.